UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00815-MRA-AGR | Date | February 27, 2026 |
|---|---|---|---|
| Title | *Binod BK v. Fereti Semaia, et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**    **(IN CHAMBERS) ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND REQUIRING IMMEDIATE RELEASE FROM CUSTODY [3]**

Before the Court is Petitioner's Request for Temporary Restraining Order and Preliminary Injunction ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 3. The Court read and considered the moving, responsive, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

I.    **BACKGROUND**

Petitioner Binod BK ("Petitioner") filed this habeas petition on February 19, 2026. ECF 1. The petition alleges as follows:

Petitioner is a citizen of Nepal who arrived in the United States in the fall of 2024[1]. *Id.* ¶ 2. Petitioner was apprehended by Customs and Border Protection and was detained and subsequently released under 8 U.S.C. § 1226(a). *Id.* While detained, Petitioner was given a Credible Fear Interview and was found to present a credible fear of return to Nepal. *Id.* ¶ 55. On or about March 3, 2025, Petitioner lodged an application for asylum. *Id.* ¶ 62. Petitioner alleges he complied with all requirements regarding his asylum application and appearance at immigration appointments. *Id.* ¶ 67. Petitioner was re-detained on or about Feb. 6, 2026 without prior notice. *Id.* ¶ 2. Petitioner remains in detention at Adelanto Detention Facility.

---

[1] The petition states that Petitioner arrived in the United States on or about Sept. 1, 2024, but later states this entry was on or about Oct. 18, 2024. ECF 1 ¶¶ 2, 53. The TRO Application states that Petitioner arrived in the United States on or about Oct. 18, 2024. ECF 3 at 5. Determination of the specific date is not necessary for the Court's purpose in evaluating this TRO Application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00815-MRA-AGR | Date | February 27, 2026 |
|---|---|---|---|
| Title | *Binod BK v. Fereti Semaia, et al.* | | |

*Id.* ¶ 4.   Petitioner had a Master Calendar Hearing on Feb. 19, 2026.   *Id.* ¶ 66.   Petitioner does not allege, nor does the government propose, that Petitioner has received a post-deprivation bond hearing following his re-detention.   *See generally* ECF 3, 6.

In the instant TRO Application, filed the same day as the petition, Petitioner requests that the Court order Petitioner's immediate release.   ECF 3 at 1-2.   On February 24, Respondents filed a response to the TRO Application, arguing that Petitioner's relief should be limited to a bond hearing ordered within 7 days.   ECF 6.   Petitioner filed a reply on the same day requesting that if the Court grants relief in the form of a bond hearing, the Court requires an expedited hearing.   ECF 7.

## II.   LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.   *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).   Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).   Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction."   *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another."   *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).   Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff."   *Cottrell*, 632 F.3d at 1132.

## III.   DISCUSSION

### A.   Whether Petitioner is a member of the Bond Eligible Class under *Bautista*

Respondents argue, and Petitioner does not disagree, that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00815-MRA-AGR | Date | February 27, 2026 |
|---|---|---|---|
| Title | *Binod BK v. Fereti Semaia, et al.* | | |

BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) *reconsideration granted in part*, --- F. Supp. 3d ---, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), *and amended and superseded on reconsideration*, --- F. Supp. 3d ---, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). ECF 6 at 2. Respondents argue that, as such, the only appropriate remedy is a bond hearing ordered within 7 days under the order enforcing the judgment issued in *Bautista* on Feb. 18, 2026. *Id.* (citing 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, Dkt. 116). In his reply, Petitioner argues that the Court may order a bond hearing sooner than 7 days but does not otherwise contest the government's assertions. ECF 7.

Under *Bautista*, the certified Bond Eligible Class comprises:

All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) *were not or will not be apprehended upon arrival*; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

2025 WL 3678485, Dkt. 82 (emphasis added). The Petition and TRO Application allege, and Respondents do not dispute, that Petitioner was apprehended and detained upon his arrival to the United States in 2024. ECF 1 ¶ 2; ECF 3 at 5. Petitioner was subsequently released from detention and later re-arrested. ECF 1 ¶ 2. As such, the Court does not find that Petitioner is a member of the Bond Eligible Class under *Bautista*, and the Court is not limited in its ability to grant relief based upon the order enforcing judgment in that matter.

**B.    *Winter* Analysis**

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his procedural due process claim, and that the balance of hardships tips sharply in his favor.

**1.    *Likelihood of Success on the Merits***

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00815-MRA-AGR | | Date | February 27, 2026 |
|----------|------------------------|--|------|-------------------|
| Title | *Binod BK v. Fereti Semaia, et al.* | | | |

that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 473 (2004).

Petitioner argues his arrest and re-detention violate his procedural due process rights under the Fifth Amendment because he was denied prior notice and an opportunity to be heard before a neutral arbiter. ECF 1 ¶¶ 72-81. Respondents do not contest this, indeed framing their filing as a "response" rather than an "opposition," and focus their argument solely on what relief Petitioner is entitled to. ECF 6 at 2.

It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), when determining what process is required before the government may impair a protected interest, the Court must weigh (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests. "Applying this test, the [Supreme Court] usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, e.g., *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding prison parolees have a due process liberty interest)).

Petitioner was initially released from detention after a determination that he posed neither a danger nor a flight risk, which Respondents do not contest. ECF 1 ¶¶ 2, 56; *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. Nov. 20, 2017) (explaining that "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *2 n.1 (E.D. Cal. July 11, 2025) (same); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *17 (E.D. Cal. Oct. 16, 2025) (same). Thus, to re-detain Petitioner following release, the government must present "evidence of materially changed circumstances—namely, evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00815-MRA-AGR | | Date | February 27, 2026 |
|---|---|---|---|---|
| Title | *Binod BK v. Fereti Semaia, et al.* | | | |

that the noncitizen is in fact dangerous or has become a flight risk or is now subject to a final order of removal." *Saravia*, 280 F. Supp. 3d at 1176. As such, Petitioner has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). While the government has discretion in this respect, it is not unbounded. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

Based upon the facts in the record, the Court finds the risk of erroneous deprivation is considerable here. Respondents make no argument that Petitioner was arrested pursuant to a warrant or provided written notice of the termination of his supervised release and an opportunity to be heard before he was re-detained. *See generally* ECF 6.

The final *Mathews* factor is the government's interest. Respondents do not assert any purported governmental interest in Petitioner's continued detention or offer any argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard *before* his release was revoked and he was re-detained, as is generally required under *Zinermon*, 494 U.S. at 127. "And detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, *12 (N.D. Cal. Sept. 12, 2025) (citing *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025)). Respondents thus fail to establish the government has significant interest in Petitioner's continued detention.

### 2. Other Winter Factors

Petitioner has also established irreparable harm. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994).

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues there exists a strong public interest in guarding against unlawful government actions, ensuring compliance with the law, and reducing the costs of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00815-MRA-AGR | | Date | February 27, 2026 |
|---|---|---|---|---|
| Title | *Binod BK v. Fereti Semaia, et al.* | | | |

immigration detention.   ECF 3 at 12.   Respondents, focusing their response on the scope of relief, do not assert any counter arguments on this factor.   *See* ECF 6 at 2.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue."   *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)).   That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).   Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

**C.     Scope of Relief**

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'"   *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)).   The TRO Application seeks immediate release of Petitioner.   ECF 3 at 1-2.   Respondents argue that a bond hearing is the appropriate relief.   ECF 6 at 2.

For the reasons explained above, the Court is persuaded that a pre-deprivation hearing is warranted in this case, given Petitioner's substantial liberty interests and the government's decision to re-detain Petitioner without notice or an opportunity to respond to any claim of changed circumstances requiring detention.   Numerous district courts, including this Court, have granted the same relief Petitioner seeks here.   *See, e.g., Garcia Mejia v. Noem*, No. 5:25-cv-03504-MRA-JDE, ECF 13 (C.D. Cal. Jan. 5, 2026); *Juarez Fernandez v. Semaia*, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 (C.D. Cal. Jan. 13, 2026) (granting immediate release where noncitizen's parole was revoked without due process); *M.V.F.*, 2025 WL 369141, at *8 (same); *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321 (S.D. Cal. Dec. 23, 2025) (same).

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00815-MRA-AGR | Date | February 27, 2026 |
|----------|------------------------|------|-------------------|
| Title | *Binod BK v. Fereti Semaia, et al.* | | |

## IV.    CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**.   The Court further **ORDERS** as follows:

1.    Respondents shall release petitioner from immigration detention forthwith and shall not impose any release restrictions not imposed upon Petitioner's previous release unless deemed necessary at a future pre-deprivation bond hearing.

2.    Respondents are enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing.   At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community; and

3.    Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue.   See L.R. 65-1.   Respondents shall file any written response to the Order to Show Cause no later than **March 6, 2026**.   Petitioner shall file a reply no later than **March 9, 2026**.   If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **March 9, 2026**.   The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **February 27, 2026** and expires at 5:00 p.m. on **March 13, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

|                              |          -          :          -         |
|------------------------------|------------------------------------------|
| Initials of Deputy Clerk     | mku                                      |